IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANTHONY WHITE,                    :    CIVIL ACTION
                                  :    NO. 08-606-ER
        Plaintiff,               :
                                  :
        v.                        :
                                  :
CHRISTIAN BROWN, et al.,          :
                                  :
        Defendants.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          April 28, 2010


On September 23, 2008, Plaintiff Anthony White ("Plaintiff") filed a pro se complaint against Detective Christian Brown ("Detective Brown"), Detective Ronald Kline ("Detective Kline")[1], Jesse McCrae ("McCrae"), and Prosecutor Martin O'Connor ("O'Connor") (collectively, "Defendants") alleging constitutional violations arising out of his arrest and prosecution for a robbery of a clothing store.

Presently before the Court is Defendants' motion for summary judgement.  As the Court concludes that Plaintiff cannot establish that his constitutional rights were violated and that Defendants are protected by either absolute or qualified immunity, summary judgment will be entered in favor of Defendants.

---

[1]    Plaintiff incorrectly listed Detective Ronald Kline as "Detective Klein."  This Memorandum employs the correct spelling throughout.

## I.    BACKGROUND

On December 24, 2006, an armed robbery was committed by two individuals at the Forman Mills store located at 4601 Market Street, Wilmington, Delaware (the "Robbery").  (Defs.' Mot. Summ. J. Ex. A 25.)  During the Robbery, two males attempted to remove clothing from the store valued at approximately $99.95.  (Id.) After being confronted by McCrae, the security guard on duty on the night of the Robbery, one of the perpetrators discharged a firearm.  (Id. 25-26.)  Neither of the suspects was immediately apprehended.

In January 2007, Detective Brown began an investigation into the Robbery, during the course of which he obtained photos of the perpetrators of the Robbery from the store's surveillance camera.  (Id. 26.)  Detective Brown used the photos to prepare a flyer seeking information concerning the identification of the perpetrators.  (Id.)  After seeing the flyer, Detective Kline contacted Detective Brown and stated that one of the suspects on the flyer resembled Plaintiff.  (Id.)  Detective Kline was familiar with Plaintiff's photo prior to viewing the flyer.

In January 2007, Detective Brown interviewed McCrae, who stated that he observed at least one of the suspects during the course of the Robbery.  (Id. 1-2.)  Detective Brown then prepared a photo lineup for McCrae to review.  (Id.)  In

- 2 -

preparing the photo lineup, Detective Brown used one of
Plaintiff's photographs on file with the Delaware Criminal
Justice Information System.  (Id.)  McCrae viewed the photo
lineup and positively identified Plaintiff as one of the
perpetrators of the Robbery.  (Id.)

Subsequent to McCrae's eyewitness identification of
Plaintiff, Detective Brown prepared an affidavit of probable
cause and arrest warrant, as well as a search warrant, which were
approved by a Justice of the Peace Court on February 12, 2007.
(Id.)  The search and arrest warrants were executed on February
12, 2007, at which time Plaintiff was arrested.  (Id.)  During
the execution of the search warrant marijuana and a hand gun were
seized.  (Id.)

O'Connor was assigned to prosecute the charges against
Plaintiff stemming from the Robbery on February 23, 2007.  (Id.
77.)  On March 19, 2007, an indictment was returned against
Plaintiff, charging him with Robbery First Degree, Possession of
a Firearm During the Commission of a Felony, Conspiracy Second
Degree, Possession of a Deadly Weapon by a Person Prohibited,
Reckless Endangering First Degree, Possession with Intent to
Deliver a Non-Narcotic Schedule I Controlled Substance, and
Maintaining a Dwelling for Keeping Controlled Substances.
O'Connor signed the indictment against Plaintiff charging the
offenses relating to the Robbery.

- 3 -

During this same time period, March 2007, O'Connor was involved with the prosecution of a criminal trial in which Plaintiff was charged with several offenses, including Attempted First Degree Murder.  (Id. 76.)  These charges were wholly separate from the Robbery incident.  On March 13, 2007, the jury returned guilty verdicts against Plaintiff for these unrelated offenses and he was sentenced to a period of incarceration of 18 years.  (Id.)

On May 1, 2007, the Robbery prosecution was transferred to the Fraud Division of the Delaware Attorney General's Office. (Id. 77.)  O'Connor avers that he had no personal involvement in the prosecution of Plaintiff's Robbery case after it was reassigned in May 2007.  (Id.)  O'Connor further asserts that he had no personal involvement with either Detective Brown or Detective Kline in the Robbery investigation, and that he did not draft, review, or otherwise authorize either the arrest warrant or the search warrant prior to their execution.  (Id.)

On November 2, 2007, as part of a plea agreement, Plaintiff pled guilty to the charge of illegal possession of a firearm in exchange for an agreement by the prosecution to dismiss all remaining charges.

Following his incarceration, Plaintiff commenced the instant suit against the Defendants pursuant to 42 U.S.C. § 1983. On December 19, 2008, the Court dismissed Plaintiff's claims

without prejudice for failure to state a claim.  Subsequently,
Plaintiff filed an amended complaint.  On January 29, 2009, the
Court entered an Order dismissing all claims against McCrae and
finding that Plaintiff could assert cognizable claims for false
imprisonment against Detectives Brown and Kline, and malicious
prosecution and conspiracy against Detective Brown, Detective
Kline and O'Connor.  At the conclusion of discovery, Defendants
filed the motion for summary judgment currently before the Court.


**II.  DISCUSSION**

    A.  <u>Summary Judgment Standard</u>

      A court shall grant summary judgment only if "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ .P. 56(c).  The moving party bears the burden of
proving that no genuine issue of material fact exists.  <u>See</u>
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
586 n.10 (1986).  Facts which alter the outcome are deemed
"material" and disputes are deemed "genuine" if evidence exists
from which a rational person could conclude that the position of
the person with the burden of proof on the disputed issue is
correct.  <u>See Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d

- 5 -

300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).

In reviewing a summary judgment motion, the court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."  Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

B.   Section 1983 Framework

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal

law by state officials.  <u>See</u> 42 U.S.C. § 1983.[2]  Section 1983,
however, is not an independent source of substantive rights, but
merely a method to vindicate violations of federal law committed
by state actors.  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1204 (3d Cir.
1996).  "To state a claim under § 1983, a plaintiff must allege
the violation of a right secured by the Constitution and laws of
the United States, and must show that the alleged deprivation was
committed by a person acting under color of state law."  <u>West v.
Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted).[3]  Plaintiff
has alleged that this Fourth and Fourteenth Amendment rights were
violated based on his false imprisonment, malicious prosecution,
and conspiracy claims.

     Even where a plaintiff can demonstrate that a
constitutional violation was committed, state actors, such as

---

[2]    The pertinent language of section 1983 states:

Every person who, under color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory
or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other
proper proceeding for redress.

<u>Id.</u>

[3]    There is no dispute among the parties that Defendants
Brown, Kline, and O'Connor were all state actors acting within
their official capacities.  Therefore, this Memorandum does not
address this question in resolving Defendants' motion for summary
judgment.

police officers, who perform "discretionary functions," are cloaked with the protection from having to defend these actions, if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 815, (2009). This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In Saucier v. Katz, the Supreme Court established the following sequential two-step inquiry for analyzing claims of qualified immunity: (1) whether the facts that the plaintiff has shown make out a violation of a constitutional right; and (2) if such a violation is shown, the court must decide whether the right at issue was "clearly established" at the time the defendant acted. 533 U.S. 194, 201 (2001); see Pearson, 129 S. Ct. at 815-16. More recently, the Supreme Court eliminated the requirement that the two steps enumerated in Saucier be analyzed in sequential order. See Pearson, 129 S. Ct. at 818 ("On reconsidering the procedure required in Saucier, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). In determining whether a constitutional right is "clearly established," the

relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Montanez v. Thompson, --- F.3d ---, 2010 WL 1610612, at *6 (3d Cir. Apr. 22, 2010) (internal quotation marks and citations omitted).  In other words, the second prong of the qualified immunity analysis hinges on the "'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" Id. (quoting Pearson, 129 S. Ct. at 822); see Bayer v. Monroe County Children and Youth Serv., 577 F.3d 186, 193 (3d Cir. 2009) ("[I]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.") (quoting Saucier, 533 U.S. at 202).

Proceeding under these principles, this Memorandum will address Plaintiff's claims to determine first, whether a constitutional violation has occurred, and second, whether each Defendant is entitled to qualified immunity.

C.   False Imprisonment

Plaintiff has asserted a claim of false imprisonment against Detectives Brown and Kline.  A claim under § 1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures.  Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).  To establish a claim for false imprisonment, Plaintiff is required to show

- 9 -

that the arresting officer lacked probable cause to make the arrest. See id.; Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988); Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) ("To maintain a § 1983 false arrest claim, a plaintiff must show that the arresting officer lacked probable cause to make the arrest."). The crucial inquiry in a § 1983 false imprisonment claim is not whether the person arrested actually committed the offense, but whether probable cause existed to believe that the person arrested committed the offense. See Dowling, 855 F.2d at 141; Wright, 409 F.3d at 602 (stating that "the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime," but whether the arresting officer had probable cause); see also Baker v. McCollan, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released.").

"Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972) (citing Draper v. United States, 358 U.S. 307, 311-312 (1959)). As such the evidentiary standard for establishing probable cause is significantly lower than that which is required to obtain a conviction. Wright, 409 F.3d at

- 10 -

602; <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.") (citations omitted).  Therefore, it is irrelevant to the probable cause analysis the exact crime that a suspect is actually charged with or whether the suspect is later acquitted of the charges altogether.  <u>Wright</u>, 409 F.3d at 602; <u>see</u> <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."); <u>DeFillippo</u>, 443 U.S. at 36 ("[T]he mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").  Probable cause exists for an arrest if "'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'"  <u>Wright,</u> 409 F.3d at 602 (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)); <u>see also</u> <u>Wilson v. Russo</u>, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime).

Here, as probable cause existed for Plaintiff's arrest, his false imprisonment claim under § 1983 is without merit.  The totality of the facts and circumstances surrounding Plaintiff's

arrest support a finding of probable cause.[4]  Plaintiff's arrest

was effectuated pursuant to an authorized arrest warrant and

underlying affidavit of probable cause, both of which carry a

presumption of validity.  See United States v. Leon, 468 U.S.

897, 914 (1984); Franks v. Delaware, 438 U.S. 154, 171 (1978).

Furthermore, Plaintiff's arrest was grounded in the positive

photo identification by an eyewitness, McCrae.  See Wilson, 212

F.3d at 790 (stating that a positive identification by a victim

witness is usually sufficient alone to establish probable cause).

Plaintiff contests that sufficient probable cause

existed to justify his arrest on two grounds.  Both of these

challenges, however, are unpersuasive.  One, Plaintiff claims

that the positive identification by McCrae is tainted because it

was coerced by Detective Brown on the basis that he "had

something criminal over Jesse McCrae's head."  (Pl.'s Resp.

Defs.' Mot. Summ. J. 2.)  Plaintiff provides no evidentiary

---

[4]      Courts have found that a guilty plea, standing alone,
represents sufficient evidence of probable cause to justify an
arrest.  See, e.g., Imbergamo v. Castaldi, 392 F. Supp. 2d 686,
696 (M.D. Pa. 2005) (granting summary judgment on § 1983 claim
because the plaintiff's entry of a guilty plea "conclusively
establishes the existence of probable cause"); Padro v.
Heffelfinger, 110 F.R.D. 333, 334-35 (E.D. Pa. 1986) (granting
summary judgment as to § 1983 claim for false arrest because
plaintiff's guilty plea precluded him from establishing that no
probable cause existed for is arrest).  The fact that Plaintiff
entered a guilty plea can serve to foreclose any argument that
probable cause for his arrest did not exist.  However, as the
Court concludes that the facts and circumstances surrounding
Plaintiff's arrest did support a finding of probable cause, it is
not necessary to resolve Plaintiff's claim on this narrow ground.

- 12 -

support for this assertion.  Therefore, this baseless averment
does not undermine a finding of probable cause.

Two, Plaintiff contends that probable cause for his
arrest was lacking because McCrae's original description of the
Robbery suspects upon which the affidavit of probable cause was
based stated that the suspects of the Robbery had braided hair
whereas he had shorter, unbraided hair at the time of the
Robbery.  There is no competent evidence in the record that
Plaintiff did not have braided hair at the time of the Robbery.
Plaintiff alleges that Detectives Brown and Kline, during the
execution of the search warrant, discovered a photo of him dated
December 2, 2006, which showed that he did not have braided hair.
(Brown Dep. 12-13.)  However, Plaintiff submits no other evidence
in support of this assertion.  Furthermore, he admits that he did
have braided hair in the past, and as recently as 2004.  (Id.
14.)  On the state of the record, Plaintiff has failed to present
evidence which undermines the accuracy of the affidavit of
probable cause's description of Plaintiff as having braided hair
at the time of the Robbery.

Even assuming arguendo that Plaintiff did not have
braided hair at the time of the Robbery, this fact is not in
itself sufficient to vitiate the finding of probable cause.
McCrae was presented with a photo lineup approximately one month
after the Robbery from which he "immediately identified"

Plaintiff as one of the suspects in question.  (Defs.' Mot. Summ. J. Ex. A 2.)  Detective Brown was permitted to make a reasonable determination of the credibility of the identification at the time it was given to support an arrest warrant.  Even assuming that Detective Brown was, or should have been, aware of the fact that Plaintiff did not have braided hair, this discrepancy from McCrae's original description is not fatal to the positive photo identification.  See Wilson, 212 F.3d at 791-92 (finding that discrepancy in suspect's height of several inches between an eyewitness' original description and a subsequent positive identification did not undermine the finding of probable cause); Lallemand v. Univ. of R.I., 9 F.3d 214, 216-17 (1st Cir. 1993) (finding that discrepancies concerning a suspect's first name, hair style and height were trivial in terms of probable cause based on a subsequent positive identification by an eyewitness); Greene v. City of Phila., No. 97-4264, 1998 WL 254062, at *8 (E.D. Pa. May 8, 1998) (granting summary judgment for defendant on § 1983 claim and finding that plaintiff's attempt to discount a finding of probable cause based on a discrepancy of an eyewitnesses description of several inches of height "border[ed] on ludicrous").

        As Plaintiff has failed to establish a lack of probable cause, his claim for false imprisonment pursuant to § 1983

fails.[5]

D.   Malicious Prosecution[6]

To prevail on a malicious prosecution claim under §
1983, a plaintiff must show that: (1) the defendants initiated a
criminal proceeding; (2) the criminal proceeding ended in the
plaintiff's favor; (3) the proceeding was initiated without
probable cause; (4) the defendants acted maliciously or for a
purpose other than bringing the plaintiff to justice; and (5) the
plaintiff suffered deprivation of liberty consistent with the

---

[5]   There is a question of whether Detective Kline was even
involved in Plaintiff's arrest other than alerting Detective
Brown to Plaintiff as a potential suspect based on the picture in
the flyer.  As Plaintiff cannot establish a constitutional
violation for false imprisonment under the circumstances, it is
not necessary to determine the extent of Detective Kline's
involvement in order to resolve the motion for summary judgment.

[6]   In Wallace v. Kato, Justice Scalia expounded on the
difference between the interrelated torts of false imprisonment
and malicious prosecution, explaining that:

> false imprisonment consists of detention without legal
> process, a false imprisonment ends once the victim
> becomes held pursuant to such process-when, for example,
> he is bound over by a magistrate or arraigned on charges.
> Thereafter, unlawful detention forms part of the damages
> for the "entirely distinct" tort of malicious
> prosecution, which remedies detention accompanied, not by
> absence of legal process, but by wrongful institution of
> legal process.

549 U.S. 384, 389-90 (2007) (internal citations omitted).  The
torts, although related, are analytically different.  A false
imprisonment claim covers damages during the time of a
plaintiff's detention up until the issuance of process or
arraignment, whereas from that point forward any damages sought
must be based on a malicious prosecution claim.  Id. (internal
citations omitted).

concept of seizure as a consequence of a legal proceeding."
McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009)
(citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir.
2003)).  As Plaintiff cannot establish either that his criminal
proceeding terminated in his favor, or that there was a lack of
probable cause for his arrest, summary judgment will be granted
as to this claim.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme
Court announced what is called the "favorable termination rule,"
which forecloses certain § 1983 actions for plaintiffs who have
pleaded guilty to criminal charges. In Heck, the Supreme Court
stated:

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for other
> harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such
> determination, or called into question by a federal
> court's issuance of a writ of habeas corpus . . . . A
> claim for damages bearing relationship to a conviction or
> sentence that has not been so invalidated is not
> cognizable under § 1983.

Id. at 486-87.  Pursuant to this favorable termination rule, in
Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000), the Third
Circuit held that a plaintiff claiming malicious prosecution must
prove actual innocence as an element of his prima facie case.  As
Plaintiff entered a guilty plea concerning his prosecution for
the Robbery he cannot establish the favorable termination prong

necessary for a malicious prosecution claim.

Plaintiff attempts to discount the weight to be afforded to his guilty plea by claiming that he was "forced to accept" a plea agreement "to appease his worried mother." (Pl.'s Resp. to Defs.' Mot. Summ. J. 5.)  Even if this were to be considered a legitimate basis to invalidate his conviction, it is undisputed that Plaintiff's state court conviction was never reversed, invalidated, or called into question by the issuance of a writ of habeas corpus.  Permitting Plaintiff to recover damages on his § 1983 claim for malicious prosecution would necessarily imply the invalidity of his state court conviction, which is inconsistent with the directive in Heck.  Thus, Plaintiff has failed to establish the favorable termination prong necessary for a malicious prosecution claim.[7]

---

[7]    Similarly, the fact that certain of the charges returned in the indictment against Plaintiff were dropped in exchange for his plea agreement does not establish that the proceedings terminated in his favor.  For a nolle prosequi to be a "favorable termination," the Court must find that the charges were dismissed due to indications that the accused was actually innocent.  Donahue v. Gavin, 280 F.3d 371, 383-384 (3d Cir. 2002).  The fact that the additional charges were dropped in exchange for a guilty plea is not an indication that Plaintiff was actually innocent.  See Cromwell v. Manfredi, No. 08-1048, 2009 WL 2986609, at *7 (W.D. Pa. Sept. 17, 2009) (finding that a compromise of dropping certain charges in exchange for a guilty plea does not satisfy the "favorable termination" requirement of a malicious prosecution claim); Newsome v. Whitaker, No. 03-3182, 2005 WL 525398, at *3 (E.D. Pa. Mar. 4, 2005) (granting summary judgment on malicious prosecution claim based on plaintiff's failure to satisfy the favorable termination prong where plaintiff pleaded guilty in exchange for additional charges being dismissed).

Furthermore, Plaintiff's claim for malicious prosecution fails based on the fact that he cannot establish a lack of probable cause for his arrest.  For the same reasons as discussed above, Plaintiff cannot point to any evidence to undermine the finding a probable cause justifying his arrest.[8]

E.   Conspiracy

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999).  Plaintiff's conspiracy claim is without merit as he cannot establish an underlying constitutional violation or any agreement among the parties to attempt to deprive him of a constitutional right.

As explained above, Plaintiff is unable to demonstrate a deprivation of his constitutional rights through either a false imprisonment or malicious prosecution claim.  See Ridgewood, 172 F.3d at 254 (a conspiracy claim requires a showing that plaintiff

_____

[8]     The only evidence of record cited to by Plaintiff in support of is malicious prosecution claim is an e-mail sent from his attorney, Joseph Hurley, to O'Connor dated January 8, 2008, which states: "Hey, I heard your 'frameup' of 'Ant' on the Forman Mills robbery was revealed.  What happened, bro?" (Defs.' Mot. Summ. J. Ex A 109.)  O'Connor avers that he has no recollection of even receiving this e-mail and has no knowledge of the "frameup" referred to by Mr. Hurley.  (Id. 77.)  This cryptic and unsolicited reference to a "frameup" by Plaintiff's own attorney is wholly insufficient to demonstrate that the Defendants acted maliciously in prosecuting Plaintiff.

- 18 -

suffered deprivation of a constitutionally protected right);
Young v. New Sewickley Tp., 160 F. App'x 263, 267 (3d Cir. 2005)
(finding that conspiracy claim under § 1983 cannot proceed
without establishing an underlying violation of a constitutional
right); Holt Cargo Sys. Inc. v. De. River Port Auth., 20 F. Supp.
2d 803, 843 (E.D. Pa. 1998) (there can be no liability for a
conspiracy to violate section 1983 without an actual violation of
section 1983); Defeo v. Sill, 810 F. Supp. 648, 658 (E.D. Pa.
1993) ("Without an actual deprivation [of a federal right], there
can be no liability under § 1983.").

        Furthermore, Plaintiff has cited to no evidence in the
record indicating that Defendants had any type of an agreement or
took any concerted action with respect to the investigation of
the Robbery or Plaintiff's subsequent prosecution.  See Pugh v.
Downs, 641 F. Supp. 2d 468, 475 (E.D. Pa. 2009) ("In order to
state a conspiracy claim under Section 1983, a plaintiff must
show that two or more conspirators reached an agreement to
deprive her of a constitutional right under color of state
law."); see also Loftus v. Se. Pa. Transp. Auth., 843 F. Supp.
981, 987 (E.D. Pa. 1994) (explaining that a conspiracy under §
1983 requires the plaintiff to allege that the actions taken were
interdependent and part of some concerted action on the part of
the defendants, such that "[p]arallel but independent action by
separate actors does not import conspiracy").  As Plaintiff

- 19 -

cannot establish either a violation of his constitutional rights
or an agreement among Defendants to deprive Plaintiff of a
constitutional right, summary judgment will be granted with
respect to Plaintiff's conspiracy claim.

   F. <u>Absolute and Qualified Immunity</u>

    Defendants Brown, Kline, and O'Connor each assert that
they are entitled to immunity from suit based on the execution of
their duties as public servants.[9]  As each Defendant is entitled
to immunity for their respective actions, summary judgment is
appropriate.

    Prosecutors have absolute immunity from suit under §
1983 when carrying out prosecutorial functions.  <u>See</u> <u>Van de Kamp
v. Goldstein</u>, 129 S. Ct. 855, 860-61 (2009); <u>Imbler v. Pachtman</u>,
424 U.S. 409, 427-31 (1976).  "This includes activity taken while
in court, such as the presentation of evidence or legal argument,
as well as selected out-of-court behavior intimately associated
with the judicial phases of litigation."  <u>Kulwicki v. Dawson</u>, 969
F.2d 1454, 1463 (3d Cir. 1992) (internal quotation marks and
citations omitted).  A prosecutor acting in an investigative or
administrative capacity is protected only by qualified immunity,
whereas a prosecutor acting completely outside a prosecutorial

---

   [9] Although O'Connor's asserts absolute prosecutorial
immunity, rather than qualified immunity, as the basis for his
exemption from liability, this analysis is grouped together for
purposes of efficiency.

role is entitled to no immunity whatsoever.  Id. (internal
citations omitted).

Here, Plaintiff makes bald assertions concerning
O'Connor's role in a "conspiracy" against him, however, Plaintiff
cites to no facts of record to support such a charge.  In short,
Plaintiff's basis for asserting liability against O'Connor stems
only from his actions in prosecuting the charges against him
arising from the Robbery.  (See White Dep. 10-11.)[10]  As O'Connor
was discharging his prosecutorial functions in performing these
duties, he is entitled to absolute prosecutorial immunity from
suit.

Detectives Brown and Kline assert that the doctrine of
qualified immunity exempts them from having to defend the § 1983
action.  Qualified immunity protects government officials from §
1983 suits "'insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'"  Donahue, 280 F.3d at 377
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As
explained above, Plaintiff fails to point to facts in the record
to demonstrate that he suffered a violation of his constitutional

_____

[10]    Plaintiff also cites to the fact that O'Connor was
responsible for prosecuting his unrelated attempted murder case
as a ground for bringing suit against him.  (Id.)  Plaintiff,
however, fails to explain how the fact that O'Connor was involved
in the prosecution of a separate case against him warrants
liability under § 1983.

- 21 -

rights.   Therefore, he cannot satisfy the first prong of the

<u>Saucier</u> test, and Detectives Brown and Kline are entitled to

qualified immunity.   As such, summary judgment will be granted in

favor of Defendants Kline and Brown with respect to each of

Plaintiff's claims.


**III.  CONCLUSION**

Based on the record before the Court, Plaintiff cannot

establish a violation of his constitutional rights.   Furthermore,

Defendants Brown, Kline, and O'Connor are immune from liability

under § 1983 based on the doctrines of absolute and qualified

immunity.   Therefore, Defendants' motion for summary judgment

will be granted.   An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANTHONY WHITE,          :   CIVIL ACTION
                          :   NO. 08-606-ER
       Plaintiff,     :
                          :
       v.              :
                          :
CHRISTIAN BROWN, et al.,   :
                          :
       Defendants.    :

## O R D E R

**AND NOW**, this **28th** day of **April 2010**, for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendants Christian Brown, Ronald Kline, and Martin O'Connor's motion for summary judgment (doc. no. 28) is **GRANTED**.

**AND IT IS SO ORDERED.**

 S/Eduardo C. Robreno   

**EDUARDO C. ROBRENO, J.**

- 23 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANTHONY WHITE,                       :     CIVIL ACTION
                                     :     NO. 08-606-ER
          Plaintiff,                 :
                                     :
          v.                         :
                                     :
CHRISTIAN BROWN, et al.,             :
                                     :
          Defendants.                :

**J U D G M E N T**

**AND NOW**, this **28th** day of **April 2010,** it is hereby

**ORDERED** that judgment is entered in favor of Defendants Christian

Brown, Ronald Kline, and Martin O'Connor.

It is further **ORDERED** that the case shall be marked as

closed.


**AND IT IS SO ORDERED.**

 S/Eduardo C. Robreno

**EDUARDO C. ROBRENO, J.**

- 24 -